CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
2/17/2021
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| VICTORIA B.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 6:19cv00079 |
| | ) |
| ANDREW SAUL, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Victoria B. ("Victoria") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381-1383f. Victoria alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) consider medical opinions; (2) consider evidence from non-medical sources; (3) find that her intellectual disorder met a listing; (4) assess her mental impairments; and, (5) account for her functional illiteracy and inability to meet the minimum standards of the Dictionary of Occupational Titles ("DOT") regarding language and mathematical Development. Pl.'s Br. at 12–27, Dkt. 17.

I agree that the ALJ's decision is not supported by substantial evidence, as the ALJ failed to account for Victoria's mathematical development in his Step Five analysis. Accordingly, I **RECOMMEND GRANTING in part** Victoria's Motion for Summary Judgment (Dkt. 16),

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

1

**DENYING** the Commissioner's Motion for Summary Judgment (Dkt. 24) and **REMANDING** this matter for further administrative consideration.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Victoria failed to demonstrate that she was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citations omitted). I find that remand is appropriate here because the ALJ's

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

opinion leaves the court to guess at how he reached his conclusion that there are jobs that exist in significant numbers in the national economy that Victoria can perform.

## CLAIM HISTORY

Victoria filed for SSI in May 2017, claiming her disability began on April 1, 2017, due to a learning disability, moderate intellectual disability, obesity, and strabismus (lazy eye).[3] R. 235, 278. The state agency denied Victoria's applications at the initial and reconsideration levels of administrative review. R. 115–28, 129, 130–49, 150. On October 3, 2018, ALJ Mark O'Hara held a hearing to consider Victoria's claims for SSI. R. 39–93. Counsel represented Victoria at the hearing, which included testimony from vocational expert Gerald Wells and Joseph Conley, Jr., M.D. R. 82–91. On December 27, 2018, the ALJ entered his decision analyzing Victoria's claims under the familiar five-step process[4] and denying her claim for benefits. R. 10–25.

The ALJ found that Victoria suffered from the severe impairments of intellectual functioning/borderline intellectual functioning. R. 13. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. Id. The ALJ specifically considered listing 12.05 (intellectual disorder) and 12.11 (neurodevelopmental disorders). Id. The ALJ found that regarding her mental impairments,

---

[3] "[Victoria] was previously found disabled as of April 16, 2004, and on continuing disability review. [She] was found no longer disabled as of January 31, 2015 by a decision issued on March 31, 2017 by [ALJ] Annos." R. 10.

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

Victoria had moderate limitations in understanding, remembering, or applying information, interacting with others, and concentrating, persisting, or maintaining pace, and no limitation in adapting or managing oneself. R. 14.

The ALJ concluded that Victoria retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, however, she should avoid concentrated exposure to workplace hazards. R. 16. Additionally, Victoria can perform simple, repetitive jobs with no production rates and work in a stable environment that does not require working with the public and that involves working more with things than with people. Id. The ALJ determined that Victoria has no past relevant work, but she could perform jobs that exist in significant numbers in the national economy, such as dietary aide, dining room attendant, cleaner, silver wrapper, and sorter. R. 24. Thus, the ALJ determined that Victoria was not disabled. Id. Victoria appealed the ALJ's decision and the Appeals Council denied her request for review on November 1, 2019. R. 1–6.

## ANALYSIS

Victoria alleges that the ALJ failed to properly consider medical opinions, consider evidence from non-medical sources, find that her mental impairment met a listing, assess her mental impairments, and account for her inability to meet the minimum standards of the DOT regarding language and mathematical development. Pl.'s Br. at 12–27, Dkt. 17.

### A. Medical History Overview

1. Medical Treatment

Victoria received little health treatment for either physical or mental health concerns after her alleged onset date. She occasionally reported to her family doctor for acute illnesses and she received some care for unrelated concerns at the Women's Health Services of Central Virginia.

See, e.g., R. 540–43, 589–662, 667–75. Victoria did not receive active treatment for "neurologic[al] or psychiatric concerns." See R. 525.

2. Medical Opinions[5]

Deborah Bremer, Psy.D., conducted a consultative examination in September 2014, before Victoria's alleged onset date. R. 501–06. Dr. Bremer found Victoria to be malingering. R. 504. She concluded that her administration of the Weschler Adult Intelligence test (WAIS–IV), which revealed an IQ of 43, was invalid. Id. The ALJ found Dr. Bremer's opinion somewhat persuasive. R. 22.

Joseph Conley, Jr., Ph.D., authored two medical opinions in August 2015 and August 2017.[6] R. 509–12, 546–49. Dr. Conley reported that Victoria's "thought was impoverished," noting that she obtained scores in the impaired or deficient range on a battery of tests measuring her neurocognitive status. R. 547–48. He ultimately concluded that Victoria displayed the following neurocognitive deficits: "disorientation to place and time, inhibitory dysfunction, impaired memory, impaired attention, significant deficits in overall intellectual disability [IQ of 57], illiteracy, motor dysfunction, field dependent behavior, two-dimensional constructional apraxia, and mental inertia, concreteness, and rigidity." R. 549. He concluded that these results indicate Victoria would "[be] unable to maintain any type of employment." R. 511. The ALJ rejected Dr. Conley's opinions. R. 21.

---

[5] Several non-medical sources also provided evidence. Barbara Carter, Victoria's landlord, stated that she frequently assists Victoria in everyday tasks. R. 273, 419. Paula Santagati, a vocational rehabilitation counselor also wrote a letter, concluding: "it is unlikely that [Victoria] can retain competitive, full-time employment without numerous accommodations and even with accommodations, it is unlikely that employment can be maintained." R. 399. The majority of her letter critiqued Dr. Bremer's evaluation. See R. 397–399. The ALJ found neither of these letters persuasive. R. 22.

[6] Dr. Conley additionally authored an April 2018 letter where he critiqued Dr. Bremer's opinion. R. 568–74.

5

Gretel Spitzer, M.D., conducted a neuropsychiatric evaluation in May 2017.[7] R. 524. She noted that her evaluation "support[ed] the same general conclusion" as Dr. Conley's August 2015 report. R. 524. She did not find Victoria to be malingering. R. 525. Dr. Spitzer ultimately concluded that Victoria's "moderate intellectual developmental disorder has resulted in cognitive, emotional and psychiatric deficits which make it impossible for her to work for a living." R. 526. The ALJ found Dr. Spitzer's opinion unpersuasive.

In November 2017, Timothy Barclay, Ph.D., authored an opinion. R. 551. He noted that Victoria's current mental status was normal, specifically finding her thought content appropriate, insight and judgment fair, attention and concentration good, and memory intact. Id. He found that Victoria's adaptive behavior was normal and, thus, she would not qualify for an intellectual disability diagnosis. Id. The ALJ found Dr. Barclay's opinion persuasive.

State agency psychologist Howard Leizer, Ph.D., reviewed the record in June 2017 and found Victoria capable of simple, routine, and repetitive tasks with no interaction with the general public and occasional interaction with co-workers. R. 125. The ALJ found Dr. Leizer's opinion persuasive. R. 21. Joseph Leizer, Ph.D., reviewed the record in January 2018, also concluding that Victoria was capable of simple, routine, and repetitive tasks. R. 146. The ALJ found Dr. Leizer's opinion persuasive. R. 21.

**B. Mathematical Development Required Under DOT**

Victoria argues that the ALJ erred in relying on the vocational expert's testimony. Pl.'s Br. at 24, Dkt. 17. Victoria specifically argues that she falls below the minimum requirements for mathematical development in the DOT and, therefore, does not have sufficient math ability

---

[7] Though Victoria did not treat with her regularly, Dr. Spitzer was Victoria's treating physician. See R. 524 ("I have been [Victoria's] physician for approximately nine months and over that time we have had multiple office visits.").

6

to perform any job listed in the DOT.[8] Pl.'s Br. at 22–24, Dkt. 17. Thus, she claims that the ALJ's conclusion that she would be able to perform the jobs identified by the vocational expert was not supported by substantial evidence.[9] Pl.'s Br. at 24, Dkt. 17.

The DOT assigns each job a General Education Development level in reasoning, mathematical, and language development ranging from Level 1, which requires the least ability, to a Level 6, which requires the most. See Ferguson v. Berryhill, 381 F. Supp. 3d 702, 708 (W.D. Va. 2019) (citing Zavalin v. Colvin, 779 F.3d 842, 947 (9th Cir. 2015)). Mathematical Level 1 requires a person to "add and subtract two-digit numbers. Multiply and divide 10's and 100's by 2, 3, 4, 5. Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound." Vanderpool v. Berryhill, No. 5:18–cv–44, 2019 WL 118414, at *8 (E.D.N.C. Jan. 7, 2019) (citing DOT App'x C).

After describing a hypothetical individual with Victoria's RFC, age, education,[10] and past work experience, the ALJ asked the vocational expert if the hypothetical individual could

---

[8] I do not address Victoria's functional illiteracy argument as I find there is not substantial evidence to support the ALJ's finding regarding her mathematical development.

[9] SSR 00–4p provides that an ALJ will rely on both the DOT and vocational expert testimony to determine whether a claimant can find work in the national economy suited to his RFC. Fisher v. Barnhart, 181 F. App'x 359, 365 (4th Cir. 2006). When there is an apparent unresolved conflict between the vocational expert evidence and the DOT an ALJ must determine whether the vocational expert's testimony conflicts with the DOT and, if so, obtain a reasonable explanation for the conflict. Pearson v. Colvin, 810 F.3d 204, 207–208 (4th Cir. 2015). Here the vocational expert's testimony does not conflict insofar as a claimant with the level of education identified by the ALJ ("marginal to limited") is typically capable of positions like those identified by the vocational expert. See, e.g., Morris v. Berryhill, No. 3:16–cv–587, 2017 WL 4112365, at *11–13 (E.D. Va. Aug. 30, 2017). Here the issue centers on the ALJ's failure to address Victoria's capacity to complete tasks and basic math functions at mathematical development Level 1.

[10] The ALJ and vocational expert agreed that Victoria's level of education was "marginal to limited." R. 23, 83. There are four levels of education: illiterate, marginal, limited, and high school education. A person is illiterate if he "cannot read or write a simple message . . . even though the person can sign his or her name." 20 C.F.R. § 416.964(b)(1). Generally, an illiterate person has had little or no formal schooling." Id. A marginal education consists of "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs." Id. § 416.964(b)(2). Generally, "formal schooling at a 6th grade level or less is a marginal education." Id. A limited education consists of some "ability in reasoning, arithmetic, and language skills, but not

7

perform any work. R. 83–84. The vocational expert stated that the hypothetical individual could perform work as a dietary aide, dining room attendant, janitor or cleaner, silver wrapper, and sorter. R. 84–85. Of the several jobs listed by the vocational expert, several require only Level 1 mathematical development.[11]

There is not substantial evidence that Victoria has the ability to work in even the jobs requiring Level 1 mathematical development identified by the vocational expert.[12] Victoria consistently stated that she had difficulty with mathematics and managing money. See, e.g., R. 53, 73, 289, 301, 379, 515; see also R. 517 (Horizon Behavioral Health report, likely based on Victoria's self-report, noting that Victoria needed assistance with "money management."). In a 2017 Function Report, Victoria stated she was unable to count change, handle a savings account, or use a checkbook.[13] R. 289, 301. In her hearing testimony, Victoria noted that she struggled with math in high school. R. 53. She additionally explained that in her previous job through the Ticket to Work program that she did not operate the cash register because she "do[es not] know how to count money." R. 73. Finally, a Department of Aging and Rehabilitative Services vocational evaluation stated that "[Victoria] needs to avoid jobs that require . . . computations" and noted that she fell below an acceptable competitive rate on a numerical sorting test. R. 381.

---

enough to do most of the more complex job duties needed in semi-skilled or skilled jobs." Id. § 416.964(b)(3). Generally, "a 7th to 11th grade level of formal education is limited education." Id. When there is conflicting evidence regarding a claimant's education level an ALJ cannot rely only on the claimant's years of formal schooling. See Shoulars v. Astrue, 671 F. Supp. 2d 801, 807 (E.D.N.C. 2009).

[11] Dining room attendant, silver wrapper, and cleaner require only Level 1 mathematical development.

[12] The only evidence in the record that appears to specifically support Victoria's ability to do math, as opposed to function generally, is her transcript from the alternative high school, where she frequently made As and Bs. R. 358–59.

[13] Ms. Carter, Victoria's landlord, wrote a note stating she assists Victoria with many tasks. See R. 419. According to Dr. Spitzer, Ms. Carter "helps [Victoria] with . . . managing her financial and other affairs." R. 524–25.

The medical opinions that the ALJ found persuasive do not address Victoria's mathematical development. See R. 115–28, 130–49 (state agency doctors); R. 551 (Dr. Barclay). Dr. Bremer, whom the ALJ found somewhat persuasive, noted that Victoria was malingering and, thus, she did not validly administer several assessments measuring Victoria's mathematical abilities. See R. 504. Nevertheless, Dr. Bremer concluded that Victoria did not have the competency to manage funds. Id. The medical opinions that the ALJ found unpersuasive discuss Victoria's mathematical abilities. Dr. Conley found that Victoria was unable to complete a serial 7s task. R. 510. He also found that Victoria tested at the impaired range on a test that require[d] her to give estimates of time, quantity, weight, and distance. Id.; see also R. 547 (performing at the impaired range on the same measure when tested two years later). Similarly, Dr. Spitzer found that Victoria was able to accurately count to twenty but noted that she was unable to complete a serial 3s task. R. 524–25.

The Commissioner argues that the ALJ's hypothetical question sets forth all of Victoria's credible limitations. Comm'rs Br. at 19, Dkt. 25. The Commissioner's argument does not specifically describe Victoria's mathematical development, instead citing to Victoria's testimony described in a prior ALJ decision that stated she was able to "manage[] her own finances and pay[] her own bills." R. 103–04; Comm'rs Br. at Dkt. 4, 19–20. The Commissioner also points to Victoria's degree from the alternative high school, noting that her education is marginal to limited.[14] Comm'rs Br. at 20, Dkt. 25.

---

[14] Though Victoria's education can be considered as part of the analysis, it is not enough by itself. See Flores v. Colvin, No. 5:15–cv–1639, 2016 WL 1118229, at *4 (C.D. Cal. Mar. 22, 2016) ("[Level of] education is part of the analysis, but the Court declines to hold that it, standing alone, is substantial evidence that [claimant] can hold a math level 2 position. Accordingly, the Court must review the record for facts that demonstrate [claimant] possesses the requisite mathematical ability."); see also M.H. v. Saul, No. 19–1214, 2020 WL 916856, at *5 (D. Kan. Feb. 26, 2020) (considering whether claimant met reasoning level 1 criteria and considering factors beyond education level).

Beyond noting that Victoria has a high school special education degree and finding that Victoria has a "marginal to limited" education, the ALJ did not specifically address Victoria's mathematical development with the vocational expert at the hearing. See R. 81–91. Similarly, there is no specific discussion of her ability to perform work requiring Level 1 mathematical development in the ALJ's decision. See R. 10–25. The ALJ instead appears to rely on Victoria's functional abilities to support his conclusion. See R. 13–24.

There is evidence that Victoria does not have the ability to perform jobs in the DOT requiring Level 1 mathematical development. Where there is conflicting evidence in this regard, the ALJ must explain his findings. See Vanderpool, 2019 WL 118414, at *9; Shoulars, 671 F. Supp. 2d at 807 (finding that there was conflicting evidence as to the claimant's educational level and that the ALJ's "findings regarding plaintiff's education level and illiteracy are sparse," so the "ALJ's findings are not supported by substantial evidence"); Crawford v. Comm'r, No. 1:13–cv–1230, 2016 WL 3579230, at *5 (W.D. Tenn. June 28, 2016) (finding that the ALJ's step five determination was not supported by substantial evidence when there were "too many inconsistencies between the record concerning [claimant's] abilities and impairments, in particular her reading, reasoning, math, and speech levels, and the requirements for the jobs named by the vocational expert"). Any error here is not harmless as the ALJ found that Victoria meets the requirements to work in positions named by the vocational expert, all of which require Level 1 mathematical development or higher.

The vocational expert's response to the hypothetical question must account for Victoria's vocational factors, including her ability to perform work with Level 1 mathematical development requirements. There is not substantial evidence to support the vocational expert's testimony because there is insufficient evidence that Victoria has the ability to perform the jobs

10

named by the vocational expert. See Crawford, 2016 WL 3579230, at *5. The ALJ therefore erred in relying upon the vocational expert's testimony, and the ALJ offered no specific reasons to find that Victoria could perform work requiring Level 1 mathematical development. At Step Five of the sequential evaluation process, it is the ALJ's burden to prove that a claimant can adjust to another job. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); 20 C.F.R. § 416.960(c) ("We are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors."). The ALJ did not meet that burden, and thus, remand is warranted.[15]

## CONCLUSION

For the foregoing reasons, I **RECOMMEND GRANTING in part** Victoria's motion for summary judgment, **DENYING** the Commissioner's motion for summary judgment, and **REMANDING** this case for additional consideration under sentence four of 42 U.S.C. § 405(g).

The Clerk is directed to transmit the record in this case to Norman K. Moon, Senior United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well

---

[15] Victoria's additional allegations of error will not be addressed. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). However, upon remand, the Commissioner should take into consideration Victoria's remaining allegations of error.

as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: February 17, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge